UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

WILLIAM HENDERSON CLIFTON,          CIVIL ACTION
                Appellant           1:10-cv-00417

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER     JUDGE DEE D. DRELL
OF SOCIAL SECURITY,                 MAGISTRATE JUDGE JAMES D. KIRK
                Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is an appeal by Clifton from the denial of his claim for social security benefits.  The Commissioner's final decision should be reversed and the case remanded for further proceedings.

Procedural History

William Henderson Clifton ("Clifton") filed applications for social security disability insurance benefits ("DIB") (Tr. p. 105) and supplemental security income ("SSI") benefits (Tr. p. 102) on July 16, 2007 (protective filing date), alleging a disability onset date of January 26, 2007[1] because he is a slow learner and has

---

[1] The original application has an onset date of August 13, 1973 (Clifton's date of birth).  That date was orally amended at

diabetes (Tr. p. 138).   Those applications were denied by the
Social Security Administration ("SSA") (Tr. p. 52).

A de novo hearing was held before an administrative law judge
("ALJ") on February 20, 2009, at which Clifton appeared with his
attorney, a vocational expert ("VE"), and a witness (Tr. p. 21).
The ALJ found that, although Clifton has severe impairments of
insulin dependent diabetes mellitus and borderline intellectual
functioning (Tr. p. 13), he does not have an impairment that meets
or equals one of the listed impairments of 20 C.F.R. Part 404,
Subpart P, Appendix I (Tr. p. 14).   The ALJ also found Clifton has
the residual functional capacity to perform medium work except for
work that involves lifting/carrying more than 30 pounds and he can
only perform work of a simple, routine nature with limited public
contact (Tr. p. 16).   The ALJ further found that Clifton is unable
to perform any of his past relevant work, but could work as a
freight/stock handler, machine feeder/operator, or product sorter
(Tr. pp. 19-20).   The ALJ concluded that Clifton was not under a
disability as defined in the Social Security Act at any time
through the date of the ALJ's decision on June 2, 2009 (Tr. p. 20).

Clifton requested a review of the ALJ's decision, but the
Appeals Council declined to review it (Tr. p. 1) and the ALJ's
decision became the final decision of the Commissioner of Social
Security ("the Commissioner").

Clifton next filed an appeal in this court, seeking judicial

---

the administrative hearing to the date Clifton was first
diagnosed with diabetes (Tr. p. 44).

review of the Commissioner's final decision.   Clifton raises the following issues for judicial review (Doc. 10):

> 1. The ALJ did not adequately address the evidence which establishes the existence of mental retardation, as reflected by the proof of deficits in adaptive functioning and the evidence which meets the diagnostic description in Listing 12.05.   Accordingly, the ALJ failed to properly analyze the listed impairment for which the claimant qualifies, and she did not provide a sufficient explanation as to how she reached the conclusion that the evidence fails to satisfy the listed impairment.
>
> 2.   The ALJ failed to properly develop the record regarding the diagnostic requirement and the claimant's verbal deficits, and she did not properly address agency policy in the context of the wide divergence between the verbal and performance scores.
>
> 3. The ALJ erred in finding that the medical evidence fails to demonstrate that the claimant's insulin-dependent diabetes causes insignificant work-related limitations of function.   This finding directly contradicts the ALJ's determination that the diabetes is a severe impairment and her conclusion that the claimant is restricted to medium exertion.
>
> 4. The vocational expert's testimony does not carry the Commissioner's burden of proof because the vocational expert was not advised of the mental restrictions assessed after the hearing, including the claimant's general learning ability in the lowest 4% of the population, which is incompatible with the basic requirements of the jobs on which the denial rests.

The Commissioner filed a reply brief (Doc. 12), to which Clifton responded (Doc. 13).   Clifton's appeal is now before the court for disposition.

<u>Eligibility for Benefits</u>

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a).   Eligibility is dependent upon disability, income, and other financial resources.   42 U.S.C. 1382(a).   To

3

establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

### Facts and Medical History

Clifton was 35 years old at the time of his 2009 hearing (Tr. p. 24), completed high school in special education (Tr. pp. 19, 24), and had past relevant work as a grocery bagger (through a job coach) and a general laborer in a carpentry shop (Tr. pp. 34. 139).

In 1981, 1986, 1989 and 1992, Clifton was classified as learning disabled with impairments in reading and speech

4

(articulation), and was placed in special education classes (Tr. pp. 262-268, 310-316, 317-327, 328-334, 335-341, 379-385, 387-397, 399-403, 404-410) and given speech therapy (Tr. p. 269). When Clifton was 18 years old, he was again found to be learning disabled (reading) and speech impaired due to an articulation disorder; Clifton read on a fourth grade level and did math on a third grade level (Tr. pp. 310-316). Clifton failed all areas of the LEAP test except written composition (Tr. p. 312). Clifton completed high school in special education (Tr. p. 142). In 1996, Clifton was found to be severely disabled by Louisiana Rehabilitation Services and thus eligible for state vocational rehabilitation services (Tr. pp. 276-277). Clifton's vocational rehabilitation was from February 25, 2997 through March 1, 1998 (Tr. p. 277).

Clifton was diagnosed with diabetes mellitus in January 2007 (Tr. pp. 194, 247-260). In September 2007, Clifton was diagnosed with hypercholesterolemia for which he was prescribed Lipitor (Tr. pp. 192, 223-225). January 2007 x-rays of Clifton's abdomen and chest were normal (Tr. pp. 195, 227-228). In April 2008, Clifton was also diagnosed with primary open angle glaucoma (POAG), for which he was prescribed Travatan (Tr. pp. 200-208, 259, 283). In August 2008, Clifton was seen for a fractured toe, and it was noted that Clifton's diabetes was not well controlled, and that a knot on Clifton's neck from an insect bite had become abscessed (Tr. pp. 192, 284-286).

A consultative examination was conducted in September 2007 by

5

Dr. Binu Kunjummen, an internist (Tr. p. 188). Dr. Kunjummen found
Clifton suffers from insulin-dependent diabetes (diagnosed in 2007)
and hypertension (diagnosed ten months ago), and complained of
chest pain, low back pain, and occasional headaches (Tr. p. 188).
Clifton was 5'8" tall and weighed 215 pounds (Tr. p. 189). Dr.
Kunjummen found Clifton's spine and extremities were normal and
bilateral, he was neurologically normal, and is motor strength was
normal (Tr. pp. 189-190). Dr. Kunjummen concluded that Clifton had
no obvious physical limitations or abnormalities (Tr. p. 190).

Clifton, then 35 years old, underwent a mental status
examination and intellectual testing in April 2009 with Dr.
Lanclos, a clinical psychologist (Tr. pp. 299-302). Dr. Lanclos
noted that Clifton's speech was slurred with mild stuttering, but
understandable (Tr. p. 299). Clifton reported that he lives in a
trailer on his parent's property which he takes care of himself,
but that his mother manages his finances due to his poor math
skills and inadequate understanding of money (Tr. p. 300). Clifton
also reported having a driver's license and driving independently
(Tr. p. 300). Clifton said he was not working due to his diabetes
(Tr. p. 300). Clifton's verbal IQ was 67 (1st percentile), his
performance IQ was 85 (16th percentile), and his full scale IQ was
74 (4th percentile) (Tr. p. 301). Clifton's verbal functioning,
social comprehension and fund of knowledge were in the below
average range and his nonverbal functioning was in the lower limits
of the average range (Tr. p. 301). Dr. Lanclos diagnosed
borderline personality disorder with dependent personality traits

6

and depressive disorder, NOS (Tr. p. 301). Dr. Lanclos stated that she believes Clifton can work despite his dependent personality traits based on his restricted social interaction, lack of consistent work history, and lack of acquisition of work skills (despite adequate ability in some areas) (Tr. p. 301). Dr. Lanclos also stated that Clifton would require assistance managing his finances due to intellectual deficits (Tr. p. 302).

In a statement of mental ability to do work-related activities (April 2009) (Tr. pp. 303-305), Dr. Lanclos found Clifton has mild impairments in his abilities to understand and remember simple instructions and to carry out simple instructions, and moderate impairments in his abilities to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions (Tr. p. 303). Dr. Lanclos further found that Clifton has mild impairments in his abilities to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and to change in a routine work setting (Tr. p. 304). Dr. Lanclos noted that, although Clifton prefers solitary activities and has dependant personality characteristics, he is not excessively agitated, aggressive, or violent in the presence of others, and does not have a history of problems with authority or supervisors (Tr. p. 34).

At his February 20, 2009 administrative hearing, Clifton testified that he was 35 years old, lived by himself in a mobile home, graduated from high school, and last worked as a laborer for

five years (2003 through April 2007) (Tr. pp. 24-25). Clifton testified that he used to bag groceries in a grocery store (Albertson's) for five years (Tr. pp. 25, 34). Clifton testified that he quit working as a laborer because he got diabetes, for which he takes insulin, and it slows him down a lot; he is weaker and gets dizzy a lot (Tr. p. 226). Clifton testified that he also takes medication for his blood pressure and his kidneys (Tr. p. 27). Clifton checks his blood sugar once a day (Tr. p. 28).

Clifton testified that, on a normal day, he checks his blood sugar, cleans his house, eats lunch, does laundry, cooks, washes dishes, shops for groceries, occasionally visits friends and relatives, does yard work, and watches TV (Tr. pp. 28-29). Clifton's parents help him with cleaning the house (Tr. p. 35). Clifton testified that he lives close to his parents (Tr. p. 35). Clifton also testified that he can lift a grocery bag if it doesn't weigh over thirty pounds, he does not go to church or go out socially, he collects super hero cards, he drives, and he does not play sports, hunt, or fish (Tr. pp. 29-30, 37-38). Clifton testified that he took the driver's license exam fifteen times (Tr. p. 35). Clifton testified that he does not have problems sleeping. Clifton testified that he can walk, but not as far as two miles or his feet get numb (Tr. p. 31). Clifton testified that he can stand for twenty to thirty minutes before he gets tired, he does not have any problems sitting, he can lift thirty pounds, he has not problems using his hands, he gets along with people, he can follow simple instructions but has to have them repeated, and he does not

have problems with dust, but after he is in the heat for a while he has to sit down (Tr. p. 32). Clifton also has to take a break and sit down when his blood sugar goes up (Tr. pp. 38-39).

Clifton testified that, when he worked as a bagger at Albertson's, he had a job coach, and he got his job as a laborer through his father, who is a carpenter (Tr. p. 33). Clifton's father worked at the same place and told Clifton what to do, sometimes having to repeat himself (Tr. pp. 35-36). Clifton also worked as a security guard for one month (Tr. p. 34).

Clifton's father, Herbert Clifton, testified that Clifton lives next door to him and used to work for him, mostly cleaning up (Tr. p. 40). Herbert Clifton testified that Clifton stopped working because he began to get sick due to the not-yet-diagnosed diabetes and passed out at work (Tr. pp. 40-41). Since Clifton began taking medication for his diabetes, he still has tiredness and tingling in his hands and feet, but has not passed out again (Tr. p. 41); tiredness made it difficult for Clifton to work all day (Tr. p. 43). Herbert Clifton testified that either he or another person had to work with Clifton to help him get his work done because, after a few hours, Clifton would forget what he was supposed to be doing; Clifton also worked with other carpenters, employed by his father, who understood how Clifton worked (Tr. p. 43). Herbert Clifton testified that, if Clifton had not been his son, he would have laid him off (Tr. p. 44). Herbert Clifton also testified that Clifton stopped working at Albertson's because he did not have transportation; he had to get rid of his vehicle

9

because his part time work at Albertson's was not enough to pay for his transportation to and from work (Tr. p. 42). Herbert Clifton testified that, aside from his diabetes, Clifton also has problems with communication and understanding (Tr. p. 43).

The VE testified that Clifton's work as a retail bagger as Albertson's (1997-2003) was medium work, SVP two, unskilled, and his work as a carpenter's helper or construction worker was very heavy work, SVP 2, unskilled (Tr. p. 46).

The ALJ posed a hypothetical to the VE involving a person of Clifton's age, education and vocational experience, who can lift and carry up to 30 pounds but can only do work of a simple, routine nature with limited contact with the public (Tr. pp. 46-47). The VE testified that such a person could no longer work as a bagger or a construction worker, but could work as a freight and stock handler (unskilled, light duty, 56,000 jobs), a machine feeder or offbearer (simple, repetitive work, unskilled, light duty, 66,000 jobs), or a product sorter (unskilled, light duty, 97,000 jobs) (Tr. p. 47).

The ALJ posed a second hypothetical involving light to medium work which is simple and repetitive, and involves limited contact with the public and constant supervision (the supervisor is in the work area off and on during the day, checking on the worker) (Tr. p. 47). The ALJ testified that such a person could do the three jobs previously mentioned since they would all have a supervisor present (Tr. pp. 47-48). However, if the worker needed a job coach, he would not be able to do any of those jobs (Tr. p. 48).

10

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have

11

authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

Law and Analysis

<u>Issues 1 & 2 - Listings and Development of Record</u>

First, Clifton contends the ALJ did not adequately address the evidence which establishes the existence of mental retardation, as reflected by the proof of deficits in adaptive functioning and the evidence which meets the diagnostic description in Listing 12.05. Clifton argues the ALJ failed to properly analyze the listed impairment for which Clifton qualifies (12.05(C)) and did not provide a sufficient explanation as to how she reached the conclusion that the evidence fails to satisfy the listed impairment. Clifton further contends the ALJ failed to properly develop the record regarding the diagnostic requirement and the claimant's verbal deficits, and did not properly address agency policy in the context of the wide divergence between the verbal and performance scores.

If the claimant's condition is listed, or is medically equivalent to a listed impairment, the claimant is conclusively determined disabled. <u>Cieutat v. Bowen</u>, 824 F.2d 348, 351 n.1 (5th Cir. 1987). Also, <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 n. 1 (5th

12

Cir. 1990).   A claimant has the burden of proving that his condition meets or equals an impairment listed in Appendix 1. Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 891-92, 107 L. Ed. 2d 967 (1990).   See also, Selders v. Sullivan, 914 F. 2d 614, 619(5th Cir. 1990).   For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.   An impairment that manifests only some of those criteria, no matter how severely, does not qualify.   Sullivan v. Zebley, 110 S. Ct. at 891.

Listing 12.05, Mental Retardation, states,

"Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
"The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*          *          *

"C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
"D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. marked difficulties in maintaining social functioning; or
3. marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration."

Section 12.05(C) defines an impairment to include a valid verbal, performance, or full scale I.Q. score of 60-69 inclusive, and a physical or other mental impairment imposing additional and significant work-related limitations of function.   A claimant must

13

prove both of these conditions in order to meet his burden under step three. Randall v. Astrue, 570 F.3d 651, 657 (5th Cir. 2009), citing Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). Additionally, the deficits in adaptive behavior must have manifested before age 22. Randall, 570 F.3d at 660, citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The evidence from Dr. Lanclos and Clifton's school records clearly shows that Clifton had deficits in adaptive functioning prior to age 22; that fact is not in dispute. Clifton disputes the ALJ's finding that Clifton does not meet listing 12.05 because his current adaptive functioning is borderline to low average range, does not have deficits, and indicates he is not actually retarded, despite his verbal IQ of 67 (Tr. p. 15). The ALJ found Clifton has deficiencies *only* in verbal interactions and does not have any deficits in adaptive functioning (Tr. p. 15).

The ALJ quoted the DSM-IV as stating "Impairments in adaptive functioning, rather than a low IQ, are usually the presenting symptoms in individuals with Mental Retardation." The DSM-IV-TR explains adaptive functioning at page 42,

> "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting. ...It is useful to gather evidence for deficits in adaptive functioning from one or more reliable independent sources (e.g., teacher evaluation and educational, developmental, and medical history). Several scales have also been designed to measure adaptive functioning or behavior (e.g., the Vineland Adaptive Behavior Scales and the American Association on Mental Retardation Adaptive Behavior Scale). These scales generally provide a clinical cutoff score that is a composite of performance in a number of

14

adaptive skill domains.  It should be noted that scores
for certain individual domains are not included in some
of these instruments and that individual domain scores
may very considerably in reliability.  As in the
assessment of intellectual function, consideration should
be given to the suitability of the instrument to the
person's socio-cultural background, education, associated
handicaps, motivation, and cooperation.  For instance,
the presence of significant handicaps invalidates many
adaptive scale normal.  In addition, behaviors that would
normally be considered maladaptive (e.g., dependency,
passivity) may be evidence of good adaptation in the
context of a particular individual's life (e.g., in some
institutional settings)."

The Fifth Circuit has held that the ALJ may rely on the clinical
psychologist's specific analysis of the claimant's physical and
mental capabilities, including the determination as to the
claimant's adaptive functioning.  Randall v. Astrue, 570 F.3d 651,
662 (5th Cir. 2009).

In the case at bar, the psychologist stated only that
Clifton's nonverbal functioning was in the borderline to low
average range while his verbal ability was below average, and did
not analyze Clifton's adaptive functioning.  An adaptive
functioning test was *not* administered.  Since the medical expert
did not analyze Clifton's adaptive functioning, the ALJ conducted
her own analysis, finding that Clifton has no deficits in adaptive
functioning.

ALJs have been warned by the courts against "playing doctor"
and making their own independent medical assessments.  Frank v.
Barnhart, 326 F.3d 618 (5th Cir. 2002).  An ALJ does not have the
medical expertise to substitute her opinion as to the nature of a
claimant's medical complaints for the diagnosis of a physician.
See Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2002); Schmidt v.

15

<u>Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990), cert. den., 502 U.S. 901, 112 S.Ct. 278 (1991).  In the case at bar, the ALJ erroneously tried to make a medical diagnosis in an attempt to fill in the gaps in the medical evidence.  Another consultative exam should have been ordered, with specific testing in adaptive functioning.

Moreover, the ALJ's determination that Clifton is not retarded and does not meet Listing 12.05 was also based on her erroneous findings of fact.  First, the ALJ erroneously stated that Clifton did not take advantage of Louisiana Rehabilitation Services for work; the record reflects that he did (Tr. pp. 276-277).  Second, it appears that some or all of Clifton's earnings were subsidized and not, in fact, substantial gainful activity, since he had a job coach while working at Albertson's (Tr. p. 34), and he was closely supervised and assisted in his work for his father, who admitted he would not have employed Clifton if he had not been his son.  Third, the ALJ found the Clifton is able to live alone, despite the evidence, as noted by the psychologist, that Clifton is unable to manage his own finances due to intellectual deficits and the fact that Clifton lives next door to his parents.  Fourth, the ALJ found Clifton had a third job as a security guard for five months; Clifton worked as a security guard only one month before he his employment was terminated.

The ALJ has the duty to develop the relevant facts so that she can fully and fairly evaluate the case.  <u>James</u>, 793 F.2d at 705. If the ALJ fails in this duty, she does not have before her sufficient facts on which to make an informed decision and

consequently the decision is not supported by substantial evidence. James, 793 F.2d at 704. The court will reverse the decision of the ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill her duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. Brock, 84 F.3d at 728. Also, James, 793 F.2d at 704. Brock, 84 F.3d at 728.

In the case at bar, the ALJ failed to order further psychological testing to include testing for deficits in adaptive functioning. Since the first consultative examiner failed to include adaptive functioning in her analysis and the ALJ denied benefits based on her inexpert opinion, as well as erroneous findings of fact, that Clifton does not have deficits in adaptive functioning, Clifton was prejudiced by the lack of medical expert opinion in this area. Therefore, the ALJ breached her duty to fully and fairly develop the record by ordering another consultative exam to include testing for adaptive functioning. Compare, Mapps ex rel. M.J. v. Astrue, 2010 wl 1946662, *11 (N.D. Tex.), adopted, 2010 wl 1948363 (N.D.Tex. 2010).

Therefore, the ALJ's/Commissioner's finding that Clifton does not meet Listing 12.05 is not supported by substantial evidence.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a matter of law. However, this does not entitle Clifton to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether Clifton meets or equals a

17

listing and, if he does not, whether there are any jobs existing in sufficient numbers in the national economy which Clifton can perform, given his true impairments.   Therefore, Clifton's case should be remanded to the Commissioner for further proceedings, to include another consultative examination.

Issue 3 - Severity

Next, Clifton contends the ALJ erred in finding the medical evidence fails to demonstrate that the claimant's insulin-dependent diabetes causes in significant work-related limitations of function.   Clifton argues this finding directly contradicts the ALJ's determination that the diabetes is a severe impairment and her conclusion that the claimant is restricted to medium exertion.

The ALJ found that Clifton suffers from insulin dependent diabetes mellitus, a "severe" impairment[2] (Tr. p. 13), but found there no evidence to support his claims of fatigue, tiredness, excessive use of the bathroom, etc., or that his diabetes is acute or incapacitating (Tr. p. 18).   The ALJ stated that she gave Clifton the "benefit of the doubt" with respect to his lifting capacity and included it in his physical residual functional capacity (Tr. p. 18).

The ALJ erred in finding there was no evidence to support Clifton's complaints as to his diabetes symptoms.   First, there was

---

[2] In Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit noted that an impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not affect his ability to work, and construed that to mean that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors.

testimony by both Clifton and his father as to these symptoms. Further, the medical evidence indisputably established that Clifton has diabetes, and the symptoms he complains of are classic symptoms of Type 1 diabetes. See MEDLINEplus Health Information, Medical Encyclopedia: Type 1 Diabetes, *available at* http://www.nlm.nih.gov/ medlineplus/ encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

Therefore, the ALJ erred in concluding there was *no* evidence to support Clifton's complaints of fatigue, tiredness, and excessive use of the bathroom. Since substantial evidence does not support the ALJ's findings as to Clifton's physical limitations, the final decision of the Commissioner should be reversed on this ground as well. The ALJ should weigh and consider the evidence appropriately on remand.

It is also noted that, at the hearing, when Clifton's attorney called Clifton's father to testify as a witness, the ALJ stated (Tr. p. 39), "I will give you five minutes only because we have several cases today that [sic] back to back, okay, and we need to get this done. So -- and I normally don't allow witnesses so [sic] because I think I can get whatever I have to get from questioning the Claimant but since he worked for the father I will allow him." The  procedures for an administrative hearing specifically permit a claimant to introduce witness testimony. 20 C.F.R. § 404.950(e). Moreover, in many instances, the individual listings (such as the listing at issue here, in 12.00(D)(1)(c)) specifically state that evidence from non-medical sources, such as family members and

others who know the claimant, is relevant to the disability determination. Therefore, the ALJ is cautioned to familiarize herself with and follow the rules of procedure for administrative hearings in the future.

## Issue 4 - Hypothetical Question

Finally, Clifton contends the vocational expert's testimony does not carry the Commissioner's burden of proof because the vocational expert was not advised of the mental restrictions assessed after the hearing, including the claimant's general learning ability in the lowest 4% of the population, which is incompatible with the basic requirements of the jobs on which the denial rests.

Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand. Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001), citing Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

As pointed out by Clifton, the April 2009 psychological exam was not conducted until after Clifton's February 2009 administrative hearing. Therefore, that information was not available for incorporation into the hypotheticals to the VE.

20

However, the ALJ did incorporate certain aspects of Clifton's learning disability into the hypothetical to the VE, such as simple, repetitive work and requiring supervision.  In any event, as discussed above, the record was not fully developed.  Therefore, the ALJ's hypothetical questions to the VE's were necessarily incomplete and this issue is moot.  The hypothetical questions to the VE can be corrected on remand.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Clifton's case be REMANDED to the Commissioner for further proceedings, including an additional psychological examination for adaptive functioning.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

21

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this day of February, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

22